IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARVEY PATRICK SHORT,<br><br>       *Plaintiff,*<br><br>v.<br><br>CHIEF SHAWN PAYNE and OFFICER PARKER, Millbourne Police Officers,<br><br>       *Defendants.* | CIVIL ACTION<br>NO. 15-5873 |

**PAPPERT, J.**                                                                        April 20, 2016

<u>**MEMORANDUM**</u>

      Plaintiff Harvey Patrick Short ("Short") sued Police Chief Shawn Payne ("Payne") and Officer Parker ("Parker") of the Millbourne Police Department (collectively "the Officers"), alleging the following claims: (1) false arrest and false imprisonment under 42 U.S.C. Section 1983; (2) an unreasonable search and seizure under the Fourth Amendment; (3) a due process violation under the Fourteenth Amendment; and (4) intentional infliction of emotional distress. Short's allegations stem from a purported unlawful arrest which preceded his lawful arrest on charges to which he ultimately pled guilty.

      The Officers filed a motion to dismiss Short's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Before the Court could rule on the Officers' motion, Short filed a motion for leave to amend his complaint. Attached to Short's motion was a proposed amended complaint which included additional claims of gross negligence and battery. The Court grants the Officers' motion and denies Short's motion given the futility of his proposed amendments.

**I.**

On April 13, 2015, Chris Lynam ("Lynam), an employee at Perzan Auto Radio in Upper Darby Township, Pennsylvania, told Payne that two cars were broken into over the previous weekend. (Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at Ex. A, ECF No. 7.)[1] Lynam stated that he was going to check the shop's video cameras which faced the entrance to the parking lot where the cars were parked. (*Id*.) The next day, Payne contacted Lynam and discovered that a suspect—later identified as Short—was captured on video committing the crimes. (*Id*.) After breaking into the cars, Short left the lot and walked in a westbound direction on Market Street. (*Id*.) From the video footage, Payne was able to identify Short as "a light skin black male approximately 5'7 160 lbs. wearing a black jacket, light colored pants and white sneakers." (*Id*.) Payne then went to a smoke shop at the intersection of Market and Burd Streets to see if the store's video recorded Short fleeing. (*Id*.) Payne obtained video of Short walking up the street, but was still "attempting to get a good picture of the subject." (*Id*.)

At approximately 11:15 p.m. on May 5, 2015, the Officers stopped Short on Market Street as he was walking toward the intersection of Market and Burd Streets—the same area where the crimes occurred. (*Id*.) Short was wearing dark sweat pants, white sneakers and a red sweatshirt, and was carrying a black jacket and an open can of beer. (*Id*.) The Officers asked Short where he was heading, to which Short responded, "to my sister Haddy's house in Yeadon." (*Id*.) Short told the Officers that he sometimes lived at his sister's, but also stayed at the homeless shelter at 6310 Market Street. (*Id*.) "Based on the open container of alcohol and [] Short fitting the description" of the suspect captured on video, the Officers handcuffed Short and brought him to the police station for investigation. (*Id*.; Compl. ¶¶ 4–7, ECF No. 1 at Ex. A.)

---

[1] Exhibit A to Short's response is the affidavit of probable cause which ultimately led to his arrest. Since the exhibit was attached to Short's response and is "undisputedly authentic," the Court may consider it in deciding the Officers' motion. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Payne allegedly told Short that he had video of Short "committing misdemeanor crimes." (Compl. ¶ 8.)  When they arrived at the station, Parker searched Short and handcuffed him to a chair.  (*Id*. ¶ 9.)  The Officers then placed Short in a holding cell until they could verify the addresses he provided.  (Pl.'s Resp. at Ex. A.)  After confirming the addresses, Payne took a photo of Short and made copies of Short's information, including his "4 identification cards, social security card, medical cards and everything in [his] wallet."  (*Id*.; Compl. ¶ 11.)  Short also alleges the Officers took photos of his pants and shoes, "interrogated" him without advising him of his *Miranda* rights, and subsequently put him in a cell.  (Compl. ¶¶ 10, 13, 18.)  While in the cell, Short alleges that Payne "kept looking at video tapes on the computer and stating that the person on the video looked like [Short]."  (*Id*. at ¶ 12.)  After "[a]bout 20 to 30 minutes, [Payne] took [Short] out of the cell and said that he was not sure if it was [Short] in the video."  (*Id*. ¶ 20.)  Payne returned Short's belongings and released him.  (*Id*. ¶ 21.)

Soon after releasing Short, Payne was able to access new video identifying Short as the male breaking into the cars.  (Pl.'s Resp. at Ex. A.)  Specifically, one of the videos showed that Short was wearing a red sweatshirt under his black jacket—the same red sweatshirt Short was wearing when the Officers stopped him earlier that evening.  (*Id*.)  Payne thereafter filled out an affidavit of probable cause for Short's arrest.  (*Id*.)

Short was arrested on June 9, 2015 and charged with committing the crimes for which he was originally detained and questioned.  (*Id*.)  On August 31, 2015, Short pled guilty to attempted theft from a motor vehicle and criminal mischief.  (*Id*. at Ex. B.)  He was later sentenced to 23 months in jail and one year of probation, and was ordered to pay restitution.  (*Id*.)

## II.

### A.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Short filed his complaint *pro se* so the Court "must liberally construe his pleadings." *Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d. Cir. 2003) (citation omitted); *see also Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers"). "'Liberal construction' of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States,* 540 U.S. 375, 386 (2003) (Scalia, J., concurring). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (citing *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted)).

A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

### B.

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as*

*amended* (Jan. 20, 2004) (citing FED. R. CIV. P. 15(a)).  In the context of a *pro se* complaint, "a district court must give the plaintiff an opportunity to amend his pleading to cure the defect unless such an amendment would be futile or prejudicial."  *Chatman v. City of Pittsburgh*, 437 F. App'x 115, 116 (3d Cir. 2011) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)).  "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III.

Counts I and II of Short's complaint allege claims for false arrest and false imprisonment.  (Compl. ¶¶ 22–23.)  Claims for false arrest and false imprisonment under Section 1983 originate from the Fourth Amendment's guarantee against unreasonable seizures.  *See Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 650–51 (W.D. Pa. 2010); *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012).  Because false arrest and false imprisonment claims are nearly identical, they are generally analyzed together.[2]  *See Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 571 n.8 (E.D. Pa. 2005) (quoting *Maiale v. Youse*, No. 03-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 27, 2004)).  Short separately alleges an unlawful search and seizure claim in Count IV.  (Compl. ¶ 25.)  That claim, however, is based on the same facts which form the basis for his Section 1983 claims.  (*Id.*)  The Court accordingly analyzes Counts I, II and IV together.

Count V of Short's complaint alleges a due process violation under the Fourteenth Amendment, again premised on the same facts as Counts I, II and IV.  (*Id.* ¶ 26.)  Given that "[t]he Fourth Amendment—the more specific form of relief—is the proper vehicle for th[ese] claim[s]," Count V of Short's complaint is dismissed.  *Geist v. Ammary*, 2012 WL 6762010, at *2

---

[2] Claims of false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment.  *See Quinn v. Cintron*, No. 11-2471, 2013 WL 5508667, at *3 (E.D. Pa. Oct. 3, 2013) (citations omitted).

n.9 (E.D. Pa. Dec. 20, 2012) (citing *Quales v. Borough of Honesdale*, 2011 WL 3020904, at *5 (M.D. Pa. July 22, 2011)); *see also Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 639 (E.D. Pa. 2014) (dismissing Fourteenth Amendment due process claim predicated on the same facts as the plaintiff's Fourth Amendment unreasonable search and seizure claims).

The Officers contend that Short's Fourth Amendment claims are not cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994) in light of Short's guilty plea. (Defs.' Mot. at 3–4.) In *Heck*, the Supreme Court of the United States examined whether a person convicted of a crime may recover damages related to his conviction under 42 U.S.C. Section 1983. The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck*, 512 U.S. at 486–87. If, however, the district court determines "that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. The primary issue in this case is therefore whether Short's claims "necessarily imply the invalidity of his conviction," and thus, whether *Heck* bars those claims. *Id.*

The Third Circuit Court of Appeals has held that in certain circumstances, a guilty plea is sufficient to bar a subsequent Section 1983 claim under *Heck*. *See Rosembert*, 14 F. Supp. at 640 (citing *Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005)). *Heck* does not, however, bar a claim "where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question." *Id.* (citing *McBride v. Cahoone*, 820 F. Supp. 2d 623, 632 (E.D. Pa. 2011)). For example, "a conviction and sentence

6

may be upheld even in the absence of probable cause for the initial stop and arrest." *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest")).

If, however, a successful false arrest claim could result in the suppression of essential evidence discovered during that arrest, it necessarily calls into question the validity of the conviction. *See Rosembert*, 14 F. Supp. 3d at 640–41 (citing *Mosby v. O'Brie*, 532 Fed. App'x 84, 86 (3d Cir. 2013) (finding that *Heck* barred a Fourth Amendment claim where an arrest made without probable cause would have resulted in the evidence obtained from the arrest being suppressed in a criminal trial)). Short does not contend that his second arrest was unlawful. Rather, he contends that his initial detention was without probable cause. (Pl.'s Resp. at 5.)

Short's Fourth Amendment claims are barred by *Heck* even if his first arrest was not supported by probable cause. When the Officers detained Short, they noticed that he was wearing a red sweatshirt. (Pl.'s Resp. at Ex. A.) At that time, the Officers did not have video showing the suspect wearing a red sweatshirt as he broke into the cars. (*Id*.) After releasing Short, however, the Officers acquired additional video establishing that Short's red sweatshirt matched the one worn by the suspect. (*Id*.) Given that the red sweatshirt was only discovered pursuant to the Officers' initial arrest, "a finding that the search and/or arrest was unlawful would likely result in the exclusion of this evidence." *Rosembert*, 14 F. Supp. 3d at 640–41 (citing *Mosby*, 532 Fed. App'x at 86). Because Short pled guilty, a finding that he was arrested without probable cause would likely result in the suppression of evidence which ultimately led to the issuance of his arrest warrant, and therefore necessarily imply the invalidity of his conviction.

As Short's conviction has not been vacated or otherwise invalidated, the Court finds Counts I, II and IV of Short's complaint barred by *Heck*.³

**IV.**

Count III of Short's complaint alleges a claim for intentional infliction of emotional distress ("IIED"). (Compl. ¶ 24.) To establish a claim for IIED, Short must show conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citing *Buczek v. First Ntl. Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). "Conduct that Pennsylvania courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (citing *Hoy*, 720 A.2d at 754 (collecting cases)). Pennsylvania courts also require, for purposes of an IIED claim, evidence of a physical injury caused by the defendant's conduct. *See Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).

Short alleges that he suffered from "shock, fright, fear, mental anguish, physical discomfort, embarrassment, loss of enjoyment of life, etc." (Compl. ¶ 27.) While these

---

³ To the extent Short's complaint can be read to allege Fifth or Sixth Amendment *Miranda* violations, those claims are also dismissed. "The Fifth Amendment protects against compelled self-incrimination." *James v. York Cty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (plurality)). Short does not allege that he incriminated himself in any way, and the Officers released him after thirty minutes. He therefore cannot bring a claim pursuant to 42 U.S.C. § 1983 merely for being questioned before being provided with *Miranda* warnings. *See Chavez*, 538 U.S. at 766–70; *Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003). Likewise, Short has no free-standing Fifth Amendment claim for denial of counsel during his interrogation given that the right to counsel during a custodial interrogation is merely a procedural safeguard, and not a substantive right. *See Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir.1994)).

conclusory allegations are typically insufficient to survive a 12(b)(6) motion, the Court accepts them as true given that Short's complaint was filed *pro se*. In any event, Short fails to allege conduct that "go[es] beyond all bounds of decency" such that it is "utterly intolerable in a civilized society." *Hoy*, 720 A.2d at 754. Even without probable cause, the Officers' actions in detaining and ultimately releasing Short after thirty minutes were reasonable under the circumstances. *See, e.g.*, *Dull*, 604 F. Supp. 2d at 756 (finding improper arrests not sufficiently extreme or outrageous to prevail on an IIED claim where defendants "[a]t most . . . miscalculated the propriety of their law enforcement activities"). Count III is accordingly dismissed.

### V.

Short's proposed amended complaint seeks to add claims of gross negligence and battery. (Pl.'s Prop. Am. Compl. ("Am. Compl.") ¶¶ 38–39, ECF No. 9 at *7.) Short also seeks to add the following allegations: (1) he only pled guilty because a probation officer told him that his probation would be reinstated regardless of the outcome; (2) he was admitted to "Crozer Key Stone Health Network Hospital's psychiatric unit for major depression, suicidalness [sic], and schizophrenia for 13 days"; (3) he suffered high blood pressure and migraine headaches; and (4) he was given medication while in the psychiatric unit. (Am. Compl. ¶¶ 28–32.) Short's allegations of additional physical injury purportedly stemming from the Officers' initial arrest are futile. As discussed *supra* Part IV, the Officers' actions were not akin to those "utterly intolerable in a civilized society." *Hoy*, 720 A.2d at 754.

Short's proposed gross negligence claim is also futile. The Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541 *et seq.*, "grants broad immunity from tort suits to local agencies and their employees." *Cooper v. City of Chester*, 810 F. Supp. 618, 625 (E.D. Pa. 1992). The Act generally immunizes local agencies and their employees unless the alleged

wrongdoing falls into one of the eight exceptions listed in the Act. *See id*. (citing 42 Pa. Cons. Stat. §§ 8541, 8545). Those exceptions are: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals. 42 Pa. Cons. Stat. § 8542(b). None of Short's allegations fall into one of these eight exceptions. His proposed gross negligence claim is therefore futile as it is barred by PSTCA.

Likewise, Short's proposed battery claim is futile. Generally, a defendant is liable for battery if they intend to cause a harmful or offensive contact or an imminent apprehension of such a contact, and an offensive contact directly or indirectly results. *See Montgomery v. Bazaz-Sehgal*, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999), *aff'd*, 798 A.2d 742 (Pa. 2002). Even where an arrest is not supported by probable cause, "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes . . . [a] battery." *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 366 (E.D. Pa. 2006) (citation omitted) (finding no viable battery claim despite a lack of probable cause to make the arrest where the force used was neither excessive nor unreasonable). Short fails to allege conduct by the Officers that was excessive or unreasonable. Short was seen in the area of the crimes at roughly the same time of night the crimes were committed. He was wearing clothes that substantially resembled those worn by the suspect in the video. Given their belief that Short was the suspect—which ultimately proved accurate—the Officers' actions in detaining Short for thirty minutes and subsequently releasing him were reasonable under the circumstances.

The Court grants the Officers' motion to dismiss and denies Short's motion for leave to file an amended complaint given the futility of the allegations. Short's complaint is accordingly dismissed. An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.